GEORGE H. EVANS AND J. J. COX, *Partners as George H. Evans & Co.,* J. M. NEWLAND, *et al.,* v. GEORGE L. WATSON.

### No. 445.

1. CONTRACTOR'S BOND—*Liability of Sureties.* A bond given by a contractor for an improvement to the state-house, covering the requirements of paragraph 6135, General Statutes of 1889, as extended by paragraph 6146, General Statutes of 1889, for the protection of the state, and also the requirements of paragraphs 4747 and 4748, General Statutes of 1889 (Gen. Stat. 1897, ch. 96, §§ 35 and 36), for the protection of workmen and material-men, is not void as to the sureties thereon, so as to release them from liability for labor performed, because said bond was not filed in the office of the clerk of the district court, as required by the paragraph last above cited.

Evans v. Watson.

2. —————— *Action—Necessary Parties.* In an action on a bond given under the provisions of paragraphs 4747 and 4748, General Statutes of 1889 (Gen. Stat. 1897, ch. 96, §§ 35 and 36), the subcontractor under whom the work was done is not a necessary party so that his absence makes the petition demurrable.

3. EVIDENCE—*Rulings Examined.* The objections to the introduction of evidence examined; and *held,* that no reversible error was committed in relation thereto.

4. INSTRUCTIONS—*Giving and Refusing—Examined.* The objections to the giving and refusing of instructions examined; and *held,* that no reversible error was committed in relation thereto.

5. CONTRACT—*Subletting—Release of Sureties.* Where a contractor on a public building sublets a portion of his contract, and, to enable the subcontractor to carry on and complete his work without the presence of the original contractor, executes to the subcontractor an irrevocable power of attorney to transact all the business pertaining to said subcontract to the full extent thereof, this does not work a release of the sureties on the bond given under the provisions of paragraphs 4747 and 4748, General Statutes of 1889. (Gen. Stat. 1897, ch. 96, §§ 35 and 36.)

Error from Shawnee district court; Z. T. HAZEN, judge.    Opinion filed November 12, 1898.    Affirmed.

*Edwin A. Austin, Vance & Campbell, Geo. A. Huron,* and *Overmyer & Mulvane,* for plaintiffs in error.

*Ferry & Doran,* for defendant in error.

The opinion of the court was delivered by

WELLS, J.: On May 20, 1889, the board of state-house commissioners accepted the bid of George H. Evans & Co. to do certain work in completion of the state capitol.    A contract was afterward made for said work and a bond given, signed by all the plaintiffs in error herein, conditioned for the carrying out of said contract and the payment of all indebtedness incurred for labor and material.    On this bond the action now before us was instituted to recover $257.70 for personal services rendered by the plaintiff below,

10—8 KAN. APP.

the defendant in error here, in carrying out said contract for P. E. Lane, a subcontractor under said George H. Evans & Co., and other amounts aggregating $362.06, for labor performed by other individuals under the same subcontractor on said work, the claims for which were assigned to said plaintiff. Demurrers were filed to this petition on the ground of a defect of parties defendant, on account of P. E. Lane, the subcontractor, not being made a party defendant, and also on the ground that the petition does not state facts sufficient to constitute a cause of action against the defendants. These demurrers were overruled by the court and exceptions saved.

Afterward the defendants answered as follows: (1) A general denial; (2) that the plaintiff was not the real party in interest; (3) pendency of another action on each of said claims by the assignors as plaintiffs; (4) that the bond sued on did not inure to the benefit of the plaintiff so as to enable a suit thereon by him for his individual benefit; (5) that by agreement the part of the contract under which the plaintiff and his assignors performed any labor was eliminated from the contract of George H. Evans & Co. and became a direct contract of P. E. Lane, for which Evans & Co. and their sureties were not liable; (6) that the bond had been altered after its execution without the consent of the sureties; (7) that the contract for the performance of which the bond was given was materially changed by the board of state-house commissioners after the execution of the bond, thus materially affecting the work to be performed by George H. Evans & Co. thereunder, without the consent of the sureties. To these answers the plaintiff replied by general denials. The case was tried to the court and a jury, judgment was rendered for the plaintiff, and the matter is now before us for review.

Evans v. Watson.   ·

There are eleven assignments of error, and we shall examine them, so far as seems to be necessary, in the order in which they are presented in the plaintiff in error's brief. It is first contended that the demurrers to the petition and to the evidence ought to have been sustained as to the sureties. It is claimed by the plaintiff in error that the bond sued on herein was given under the provisions of paragraph 6135, General Statutes of 1889, and that any conditions thereof not required by said section are nugatory and cannot be enforced. To this the defendants in error reply that the section of the statute referred to relates solely to the erection of the west wing and could have no relation to the central dome, and that said bond was given under the provisions of chapter 179, Laws of 1887, being paragraphs 4747 and 4748, General Statutes of 1889. (Gen. Stat. 1897, ch. 96, §§ 35 and 36.) Paragraph 6146, General Statutes of 1889, extends the provisions of paragraph 6135 to the erection of the central building, and it is evident to us that the bond in question was prepared to cover the requirements of both sections, and the mere fact, if it were a fact, that the bond was not marked with the approval of the proper officers, or found in the place where the laws require it to be kept, would not render its provisions nugatory or prevent parties intended to be benefited thereby from claiming relief under its provisions. We are cited by counsel for plaintiff in error to *Kille v. Bentley*, 6 Kan. App. 804, 51 Pac. 232, as authority supporting their contention. We do not think that case very much in point. There the court held substantially that, where by the doing of certain acts a lien would be prevented from attaching, a partial doing of the acts required would not prevent the lien.

In *McCracken v. Todd*, 1 Kan. 148, it was held that the sureties on a bond cannot take advantage of an omission to have the bond approved and its amount prescribed. A careful review of the authorities on this subject satisfies us that the true rule is that while the party on whom rests the duty of giving the bond cannot take advantage of the bond to relieve himself of liability unless it is executed, approved, delivered and deposited or recorded as required by law, yet as to the party to be protected thereby the failure to observe such requirements as relate to its approval, verification, deposit or record does not invalidate it. Such provisions are for the benefit of the state or obligee, who alone can take advantage of them.

The claim that P. E. Lane, the subcontractor under whom the services were performed, ought to have been made a party defendant is without merit, as the act under which this condition of the bond was made expressly provides for an action on the bond, and had the defendants desired a personal adjudication as to Lane, sufficient authority is given by sections 24 and 27, chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ ¶ 4113, 4118), to have brought him in. As to the objection that the claim was not for labor done under said contract within the meaning of the term labor, as used in the statute, we think the evidence was sufficient to sustain the finding of the court in that respect.

It is next contended that the objection to the introduction of evidence ought to have been sustained. J. T. Botkin, recording clerk in the office of the secretary of state, identified the papers, of the first of which exhibit "A" attached to plaintiff's petition is a copy, as being a part of the files of that office. The

other papers were the contract referred to in the bond as the contract under which said bond was given, specification No. 2 to addenda No. 2 inclusive, dated June 5, 1889, and specification No. 1 of workmanship and material required for the completion of the Kansas state capitol building, at Topeka, Kan., under which proposals were made June 1, 1887. These were properly admitted, the first two because they were the instruments sued on and were sufficiently identified, and the other because it was referred to and made a part of the contract under which the bond was given, and said specification expressly authorized any changes to be made that were thought expedient without in any way affecting the validity of the contract.

Complaint is made that the court refused and failed to instruct the jury as to the different attitudes of sureties and principals. As there was no question involving the distinction between principals and sureties in this case, such instruction was not necessary. So far as the liability upon this bond to the plaintiff was concerned they were simply obligors.

It is next claimed that neither the bond nor the contract contains any reservation of the right to make changes, and the court should have so instructed the jury. The bond, so far as this case is concerned, provides for the payment of all indebtedness incurred for labor and material furnished in the construction of the improvements provided for by plans and specification No. 2 and addenda No. 2. Specification No. 2 provides : "All general clauses in specification No. 1 not specially modified by specification No. 2, will be in full force the same as if they were in specification No. 2. Reference is had chiefly to the general clauses of specification No. 1." Among the general clauses

of specification No. 1 is the following : "Right is re-
served to make any alterations or additions to the
work that may be thought expedient without in any
way affecting the validity of the contract based on
these specifications or drawings."

It is claimed that by the transactions of July 7 and
11, 1892, between the state and George H. Evans &
Co.,  said firm was released from the work for which
recovery is sought.   We do not think that such was
the necessary or legal effect of these transactions.
The contractors sublet the iron work to P. E. Lane,
and, desiring to go to El Paso, Tex., they separated as
far as possible the sublet work from the balance of the
contract, and for the purpose of enabling the subcon-
tractor to deal directly with the owner, executed an
irrevocable power of attorney for said subcontractor
to sign and execute all vouchers for material furnished
and work done and to indorse all warrants that might be
allowed by the state board of public works and the state
architect, and to receive and receipt for all sums so
allowed, to the full sum of $19,000, said sum being
the amount due from said "George H. Evans & Co.
to said Philander E. Lane as P. E. Lane upon a sub-
contract made with him under the contract of George
H. Evans & Co. date May 20, 1889, with the state of
Kansas for the construction of the state-house building.
And the said P. E. Lane, in consideration of this power
of attorney, hereby agrees to release the said George H.
Evans and J. J. Cox from all liability arising out of
the above-mentioned subcontract."

We see no intimation here, much less conclusive
proof, that P. E. Lane had contracted with the state
of Kansas for said work, or that the state of Kansas
had accepted the said P. E. Lane as solely responsible
therefor, and had released George H. Evans & Co.

from liability on that part of their contract, or the bondsmen from their liability on the bond. This is on the theory that the state board of public works could have released the bondsmen had they so desired and agreed. Of this we have serious doubts. The bond was taken in obedience to the requirements of law, for the benefit of the material-men and workmen, and we can see weighty reasons why it should not be abrogated or annulled without the unequivocal consent of the parties for whose benefit it was given.

We see no reversible error in this case ; on the contrary, we think the judgment of the court below was right. It will be affirmed.