No. 18,735.

L. L. STALEY et al., *Appellees,* v. ALFRED WESTON et al., Partners, etc., *Appellants.*

SYLLABUS BY THE COURT.

1. TRIPARTITE AGREEMENT—*Disposition of Net Proceeds of Crops —Accounting.* K. agreed to deliver to W. in Kansas City the crops which he had raised upon a farm as tenant of C., who was entitled to one-half of the crops. K., W. and C. entered into a contract in which it was agreed that W. was to receive and sell the crops and pay over one-half of the net proceeds to S., a creditor of C. In this suit of S. against W., upon the contract, the conclusion of the district court that in arriving at the net proceeds W. should not be allowed to deduct from the amount received from sales the sums paid to K. for hauling the products of the farm to the city is sustained.

2. CONTRACT—*Promise of One Party for Benefit of Another.* The plaintiff S., for whose benefit the promise above referred to was made, may maintain an action therefor, although not a party to the contract.

3. REFERENCE—*Acquiescence—Objection too Late.* A question relating to an order of reference, and rulings upon evidence, are examined without finding error therein.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed May 9, 1914. Affirmed.

*George W. Littick,* of Kansas City, for the appellants.

*A. L. Berger,* of Kansas City, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This action is to recover the amount of a promissory note made by the lessor and lessees of farming lands; for an accounting of proceeds of the crops raised upon the land and delivered to the defendants for sale; and for the application of one-half the proceeds upon the plaintiffs' claim under an agreement between all the parties.

The cause was referred and judgment was entered upon the referee's report for the plaintiff.

The facts found by the referee, in substance, are these: F. M. Clark leased land near Kansas City to Otto Kurtze and Elizabeth Kurtze for one-half the crop, and agreed to advance $5 weekly for supplies and seed, to enable the tenant to plant and harvest the crop. To provide for these advances Clark made an arrangement with the defendants that they should make them, which they did from time to time, amounting on August 15, 1910, to $700. On that day the Kurtzes gave a chattel mortgage to the defendants on their one-half of the crop to secure this $700, and $175, an amount estimated for future advancements. On September 19 Clark and Kurtze and wife obtained a loan from the plaintiffs of $1000, for which they gave their promissory note, secured by a mortgage on crops on the land and an assignment of Clark's interest in the crops. On the same day Clark, the Kurtzes and Weston & Company entered into a contract in which it was recited that Kurtze and wife had theretofore agreed to deliver to Weston & Company their one-half of the crop; that Kurtze and wife and Clark had borrowed $1000 of the plaintiffs, secured by a mortgage on the Kurtzes' half interest, and an assignment by Clark of her half interest in the crop. The contract also provided that the crop should be delivered by Kurtze to Weston & Company for sale by them at current prices in the usual course of business, one-half of the net proceeds to be applied to pay the indebtedness due to Weston & Company, on their mortgage, the other one-half to be paid to the plaintiffs on the $1000 note. It was further agreed that statements of sales should be made to William Needles, who was to receive and divide the surplus between the lessor and lessees.

The principal contention is over the question whether certain payments made by the defendants to the Kurtzes after the date of the contract of September 19 should be deducted from the amount of sales in arriving at the net proceeds. Part of these pay-

ments were for threshing and amounted to less than the $175 estimated and included in the mortgage. Other items were for payments of money to Kurtze for labor and hauling in delivering the crops to the defendants in the city. It is insisted that these items should be deducted from the $1179.70 found by the referee to be the net proceeds. In other words, it is contended that these items should have been deducted from the amount of sales, in addition to the expenses of making sales, for drayage, commissions and the like, which were allowed by the referee in arriving at the amount of $1179.70. The contract of September 19 appears to have been the final agreement of the parties, and it nowhere appears that Kurtze was to be paid for hauling in the crops, or that the plaintiffs were to be subjected to any diminution from their one-half for any such expenses. The term "net proceeds" must be applied according to the circumstances presented, and it seems obvious that only the ordinary expenses of converting the crops into money after they had been delivered to the defendants should be deducted from the amount of sales. The truth appears to be that it was supposed that the crops would yield an amount sufficient to pay both creditors. In this they were disappointed, and neither recovered payment in full. One of the defendants testified:

"At the time this contract was executed I believed this property was sufficient to pay all indebtedness to the Westons and to the Staleys on the representation of the acreage. I relied on the representation on the acreage and believed what Clark and Kurtze told me. I supposed we would make enough out of this crop to get all that was due us and pay the Staleys and then have something left and we ratified the contract knowing what was in it. I was out at the farm I expect three times in the early part of August."

After each sale of products the defendants rendered an account in the ordinary form in transactions of this nature, giving dates, names of purchasers, quantities,

amounts received, and deductions therefrom for commissions, loading charges, freight charges, and drayage, as already stated, which expenses were allowed. These statements appear to have been made after the payments for hauling had been made. Thus it appears that the defendants, when the transactions were current, placed the same construction upon the term "net proceeds" that the referee and the district court gave it.

The finding that the money paid to Kurtze for hauling in the crops should not be deducted from the amount of sales in arriving at the net proceeds must be sustained. If it should not be so held as a matter of law from the terms of the contract, a question of fact was presented upon which the finding of the referee, approved by the district court, can not be disturbed.

Assignments of error upon questions of practice remain to be considered. It is insisted that a demurrer to the petition should have been sustained because the plaintiff's remedy was upon the note against the makers. It is not perceived how the existence of that remedy prevented them from resorting directly to the fund specially set apart for payment of the note. It is said, however, that the plaintiffs had no right to recover upon the contract of September 19, because they were not parties to it. That a person may recover upon an agreement or promise made to another for his benefit upon a sufficient consideration has been settled by many decisions. (*Griffith v. Stucker*, 91 Kan. 47, 51, 136 Pac. 937.)

Complaint is made of the order of reference, but it does not appear that the defendants objected when the order was made, nor before or during the trial, although appearing and participating therein. An objection made when the report was filed was too late. The case involved an accounting of sales of crops of different kinds at various times, supposed at the time to be worth $5000. The court believed a reference to

Staley v. Weston.

be proper, and by their acquiescence it must be presumed that the parties were of the same opinion.

On cross-examination of a witness for the plaintiffs the question was asked, What amount was due on the plaintiffs' note? Payment had not been pleaded, nor any issue raised as to the amount due. Although the evidence might have been admitted without apparent prejudice, there was no error in excluding it. One of the defendants was asked why he had made no payments to Staley. The defendants had stated their reason in their pleading, and the facts of the transaction were related in the evidence. It is not perceived how any possible prejudice could result from excluding an answer to this very general question, which would involve substantially a rehearsal of the defense. The defendants also allege error in excluding their offer to show the items of the advances making up the amount of $700 included in their mortgage. There was no error in this ruling because the amount had been agreed to and settled, and there is no claim that it is not correct.

No error is found in the proceedings and the judgment is affirmed.