The STATE of Kansas and Shawnee Mission High School District ex rel. GEORGE J. SHAW HAULING CO., a corporation, Plaintiff-Appellant,

v.

BOB ELDRIDGE CONSTRUCTION COMPANY, Inc., a corporation and Central Surety and Insurance Corporation, a corporation, Defendants-Respondents.

No. 24281.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1965.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 6, 1965.

Milton C. Clarke, Roy P. Swanson, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, for appellant.

Donald K. Hoel, of Shook, Hardy, Ottman, Mitchell & Bacon, John E. Blake, of Blake, Fabian & Fabian, Kansas City, for respondents.

SPERRY, Commissioner.

This action was instituted by the George J. Shaw Hauling Company, a corporation, referred to hereafter as plaintiff. Bob Eldridge Construction Company, Inc., hereafter referred to as Eldridge, and Central Surety and Insurance Corporation, referred to as Surety, were defendants. Plaintiff sought recovery of the sum of $1,736.42, on a statutory bond required of public bodies to secure payment to the suppliers of materials, labor, and various supplies used or consumed in the construction of a public building in the State of Kansas. The Statutes and Court decisions of the State of Kansas will govern and control the decision in this case. From an adverse judgment, plaintiff prosecutes this appeal.

This cause is before us on an agreed statement of facts. Eldridge made and entered into a general contract with Shawnee-Mission High School District, Merriam, Kansas, to erect a junior high school building. Under the terms of the contract Eldridge agreed to furnish all labor and materials and perform all work as required by the specifications contained and incorporated into the contract. Eldridge, as principal, and Surety, as surety, executed and delivered their joint and several bond, number 310927, to Shawnee Mission High School District for the purpose of complying with Section 60–1413, G.S.Kansas, which provided as follows:

"That whenever any public official shall, under the laws of the state, enter into contract in any sum exceeding $100 with any person or persons for the purpose of making any public improvements, or constructing any public building or making repairs on the same, such officer shall take, from the party contracted with, a bond with good and sufficient sureties to the state of Kansas in the sum not less than the sum total in the contract, conditioned that such contractor or contractors or the subcontractor or subcontractors of said contractor or contractors shall pay all indebtedness incurred for *supplies, materials* or *labor furnished,* used or consumed in connection with or in or about the construction of said public building or making such public improvements, *including gasoline, lubricating oils, fuel oils, greases, coal* and *similar* items used or consumed directly in furtherance of such improvements." (Emphasis ours.)

Section 60–1414 provides, in part, as follows:

"* * * When such bond is so approved and filed, no lien shall attach under this article, and if when such bond is filed liens have already been filed, such liens shall be discharged. Any person to whom there is due any sum for *labor* or *material* furnished, *as stated in the proceeding section,* or his assigns, may bring an action on said bond for the recovery of said indebtedness * * *." (Emphasis ours.)

Eldridge, as general contractor, entered into a contract with one Stanley C. Dugan doing business as Dugan Excavating Company, hereafter referred to as Dugan, to perform the excavation work at the Broadmoor School Project. Dugan, subcontractor, undertook the performance of the work required by his contract and in so doing entered into an oral agreement with Shaw to furnish and supply *power equipment, gas, oil* and *labor* to operate said equipment for the performance of said work and appellant did, at the sole request of Dugan, furnish *power equipment, oil, gas* and *labor* to operate said power equipment in performing the work required of Dugan in the performance of his contract with Eldridge. The laborers operating said equipment were employees of Shaw and all wages paid to said employees were paid by Shaw. The charges for *equipment, oil, gas* and *labor* made by Shaw are the amounts agreed upon by Dugan and appellant. In the performance of the work, the equipment was operated by Shaw's employees at the direction of Dugan. The excavation work that was

requested and directed at the instance of Dugan in connection with the Broadmoor School Project was required under the subcontract of Dugan and Eldridge.

The contract made with Eldridge and the School District, executed on August 4th, 1958, contains the following provisions:

"Article 1. Scope of the Work. The contractor shall furnish all of the materials and perform all of the work shown on the Drawings and described in the Specifications entitled Broadmoor Junior High School, 83rd and Broadmoor, Johnson County, Kansas * * *."

"Article 5. Acceptance and Final Payment— * * * Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid * * *."

The contract was performed.

The bond in question executed August 4th, 1958, expressly incorporates the aforesaid contract and provides as follows:

"THE CONDITION OF THIS OBLIGATION IS SUCH, That whereas the said Bob Eldridge Construction Company, Inc., has entered into a written contract with the Shawnee-Mission High Schools, District No. 6, Johnson County, Kansas, for the construction of Broadmoor Junior High School, Johnson County, Kansas, according to the contract and specifications attached hereto and made a part hereof, NOW, THEREFORE, if said Bob Eldridge Construction Company, Inc., Contractor, or sub-contractor, shall pay all indebtedness incurred for *supplies, materials,* or *labor furnished, used* or *consumed* in connection with or in or about the construction of said public building or making such improvements, including *gasoline, lubricating oils, fuel oils, greases, coal and similar items* used or consumed directly in furtherance of

such improvements, then this obligation shall be null and void, otherwise shall remain in full force and effect". (Emphasis ours.)

Defendants admit that there is due and owing to Shaw for its work, performed on the Broadmoor School, the sum of $1,736.42. It is further admitted that Dugan was adjudicated bankrupt in the United States District Court for the Western District of Missouri and that the bankruptcy dividend paid on Shaw's claim in Dugan's bankruptcy estate has been credited on the amount owing to Shaw.

█ Of course, if the claim in this case comes within the coverage provided by the Statutes under the provisions of which the bond was issued, there can be no question of plaintiff's right to recover. That proposition is not denied by defendant. Plaintiff is also entitled to recover on the bond if coverage provided therein is broad enough to embrace plaintiff's claim based on the use of its equipment. Shannon v. Abrams, 98 Kan. 26, 157 P. 449, 452; Leidigh & Havens Lumber Company v. Bollinger (November 1964), 193 Kan. 600, 396 P.2d 320; Thompson Transport Company v. Middlestates Construction Company (December 1964), 194 Kan. 52, 59, 397 P.2d 368. The court, in the latter case, stated that the surety company's obligation is not to pay the mere statutory liens for labor and materials but is governed by the terms of its contract.

Comparison of the pertinent language used in Sections 60–1413 and 60–1414, with that used in the bond in this case, demonstrates that the coverage given in the bond is no broader than that mentioned in the statute. The language used in the bond is identical with that used in the statute. The decision herein will, therefore, depend upon the construction which the Kansas Supreme Court has heretofore given to the language used in the statute and in the bond, particularly the words therein which we have emphasized. Presumably the parties knew the interpretation that had been

given to the language by the courts and contracted with that knowledge.

Some of the decisions appear to be rather confusing and careful consideration of the facts in each case is required in order to harmonize them. Some confusion exists because of the fact that some of the decisions are based on statutes similar to that here involved, yet different in certain respects.

■ The provisions of the bond are that Surety shall pay all unpaid bills for supplies, labor and materials. That provision is, *primarily,* for the benefit of labor and material suppliers. It gives them a claim against Surety for any such unpaid bills. No reference is made in the bond to *specific* items of the contract between Eldridge and the school district. It does not provide that Surety shall guarantee payment of *all* unpaid indebtedness incurred by the contractor in the process of completing the contract as was the case in some of the decisions, including Shannon v. Abrams, 98 Kan. 26, 157 P. 449, 450, (Syl. 4), and 452. In Thompson v. Middlestates Construction Co., supra, the court ruled on an unpaid bill for transportation of materials to the site of construction and held that plaintiff could recover therefor. But the bond sued on in that case was given under the provisions of Section 68.410 Kansas G.S.1949. That is the section covering road building contracts, and it is specifically provided therein that Sections 60–1413 and 60–1414 shall not apply to contracts made by the State Highway Commission. The statute is broader than 60–1413 and the court held that the bond given under it, in that case, bound the Surety to guarantee compliance by the contractor with the terms of the contract; that the surety on the bond is surety for the full performance of all terms of the contract. The decision is not decisive of the instant case.

In Leidigh & Havens Lumber Company v. Bollinger, supra, plaintiff sued on the bond for paint which was furnished by plaintiff to a subcontractor and consumed in the construction of the building covered by the bond given in compliance with Section 60–1413. In disposing of the case the court referred to Griffith v. Stucker, 91 Kan. 47, 136 P. 937, where it was held that the purpose of the bond is to protect laborers and material-men who made contributions to public works. The decision is authority for the proposition that one who furnished materials which are consumed in construction of a public building may collect on the bond given under Section 60–1413; and that the conditions of the bond fix the liability of the surety.

In Road Supply & Metal Company v. Bechtelheimer, 119 Kan. 560, 240 P. 846, plaintiff sought and obtained judgment for the value of steel reinforcing materials that were consumed in the construction of a public building. In another count, recovery was sought for the rental value of machinery furnished to a subcontractor and used by him in excavation and other work in the construction of a public building. Recovery on the bond was given on the count for steel used, under Section 60–1413, supra, and denied on the count for rental value, on the grounds that the value of rental equipment did not constitute supplies, labor, or materials, and was not covered by the bond given. In Union Traction Company v. Kansas Casualty & Surety Company, 112 Kan. 774, 213 P. 169, 30 A.L.R. 464, recovery for the cost of transportation of brick from the factory to construction site was denied as not being within the coverage of Section 60–1413, it not being labor or materials.

In the decided cases where suit was on a bond given in compliance with Section 60–1413, supra, and where the language of the bond did not lend itself to a broader interpretation than that of the statute, it has been held that coverage extended only to suppliers of materials and labor used and consumed in the improvement, and did not include rental on machinery and equipment. It has been said that the statute is a quasi mechanics lien; but the language of the bond will control its application if it is fairly susceptible of a broader interpretation

than that of the statute. Decisions touching bonds given to the State Highway Commission for construction of highways are not affected by the terms of Section 60–1413, supra.

■ Where, as here, the charge for rental equipment included labor and supplies for its operation, the above rule is not affected. If the charge for equipment, and other charges for labor and supplies are so commingled as to defy separation, as in this case, the claim on the bond will be denied. Gilbert Hunt Co. v. Parry, 59 Wash. 646, 110 P. 541.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.