(694 P.2d 903)
No. 55,887

CEDAR VALE CO-OP EXCHANGE, INC., *Plaintiff-Appellee*, v. ALLEN UTILITIES, INC., *Defendant*, and UNIVERSAL SURETY COMPANY, *Defendant-Appellant.*

Opinion filed January 31, 1985.

*Robert W. Kaplan* and *Jeff Dewey*, of Kaplan, McMillan and Harris, of Wichita, for defendant-appellant.

*Gary House*, of Robbins and House, of Sedan, for plaintiff-appellee.

Before BRISCOE, P.J., REES and MEYER, JJ.

MEYER, J.: This is an action by a supplier of materials against the contractor and his corporate surety on a contractor's bond.

Defendant Allen Utilities, Inc., (Allen Utilities) contracted with the City of Peru, Kansas, for a public works project concerning sewers, sewage pumping stations, force mains, and a sewage purification plant. As required by K.S.A. 60-1111, Allen

Utilities furnished what is commonly known as a contractor's bond, with Universal Surety Company (Universal) as surety.

In furtherance of several construction projects it had in the area, Allen Utilities contracted with plaintiff Cedar Vale Co-op Exchange, Inc. (Cedar Vale Co-op), to supply Allen Utilities' workers who lived in the area with project materials and supplies on an open running account. During August and September of 1980, Allen Utilities ran up an account in the sum of $9,467.03 which has remained unpaid. Cedar Vale Co-op brought suit to recover this sum. The trial court found Allen Utilities liable for $9,467.03, the total amount of materials charged. The trial court also found Universal liable as surety for $7,668.57 of the amounts charged.

From this judgment, Universal appeals.

The sole question on appeal is whether there was substantial evidence before the district court from which it could have found Universal Surety Company liable for charges made at the Cedar Vale Co-op in the name of Allen Utilities. Although both parties to this appeal try to bifurcate this question into two issues, the briefs are focused solely on the question of the existence of substantial evidence. Our analysis shall be detailed accordingly.

K.S.A. 60-1111 requires a contractor on a public works project to supply a bond to the State of Kansas "conditioned that such contractor . . . shall pay all indebtedness incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of such public building or in making such public improvements." The nature of Universal's obligation is specified in the bond which Allen Utilities and Universal executed. The bond provides in explicit terms that Universal is serving as surety only for "all indebtedness incurred for supplies, materials, or labor furnished, used or consumed in connection with or in or about the construction or making of, the [City of Peru] improvement, including gasoline, lubricating oils, fuel oils, greases, coal and similar items used or consumed directly in furtherance of such improvement . . . ."

No claim is made that the surety bond was not duly filed with the clerk of the district court or that the action was not commenced within six months — requirements under the statute, K.S.A. 60-1111(b).

It is said the written contract between Allen Utilities and

Universal varies from the statutory language. Although both parties cite authority discussing the scope of the contractor's bond, neither Cedar Vale Co-op nor Universal contend Universal's liability extends beyond the Peru, Kansas, project. The surety bond covered the construction of the improvement in Peru, Kansas, and all labor and materials expended on construction. The execution of the surety bond as required by K.S.A. 60-1111 shows an intention to comply with the contract between Allen Utilities and the City of Peru, and with the statutory requirements. The purpose of K.S.A. 60-1111 is to protect the contributions of those assisting in the construction of public improvements and public works and the bond given in compliance with the statute must be construed to accomplish the end which the legislature had in view. *Leidigh & Havens Lumber Co. v. Bollinger*, 193 Kan. 600, 602, 396 P.2d 320 (1964). This the contractor's bond at issue did.

Whether substantial evidence is present in this case depends upon whom the burden of proof falls. The record provided this court is devoid of any evidence which serves to prove that gasoline and other materials charged at the Cedar Vale Co-op were used at the construction site in Peru, Kansas. There was evidence Allen Utilities had a charge account at the Cedar Vale Co-op, and there was evidence many of the men working on the Peru site lived in Cedar Vale. But these same men worked at other sites in other cities, and the only proof offered that any one of these men ever went to the Peru construction site after having charged materials at Cedar Vale was testimony that when the men worked at other projects, they normally charged their supplies at other places. The only exceptions to this were seven trips made by one Gerald Thompson. It was shown that on these seven occasions Thompson charged a total of $704.27, and that on those days, also, he did go to the Peru site. However, there is no evidence that he delivered anything there, nor was there any proof that on those same days he did not also go to other sites. No concrete evidence was presented by either side linking charges made at the Co-op to the Peru, Kansas, project. No one who testified knew where the materials went after they were charged.

Thus, the issue can be resolved only by determining upon whom the burden of proof lay.

Kansas has never specifically addressed the subject of burden

of proof with regard to contractors' bonds. Universal discusses in detail decisions of other states wherein the burden of proof is on the party furnishing the materials to show such materials were actually used in the construction of the building. Kansas has never adopted these holdings in this context, however. In contrast, Cedar Vale Co-op contends this court should analogize contractors' bonds with mechanics' liens and should follow the rules regarding burden of proof therein.

In Kansas, contractors' bonds furnished on public works projects are substitutes for mechanics' liens. *Murphree v. Trinity Universal Ins. Co.*, 176 Kan. 290, 269 P.2d 1025 (1954). Contractors' bonds are for the use of all persons in whose favor liens might accrue. *Murphree*, 176 Kan. at 294. When a bond is filed, a claimant is not required to file a mechanic's lien statement in order to preserve his rights, but may look to the bond for recovery. *Murphree*, 176 Kan. at 294.

Contractors' bonds are thus closely aligned with, and in fact take the place of, mechanics' liens. This being so, it is fair to analogize rules applicable to mechanics' liens to contractors' bonds.

An analogy to the burden of proof in mechanics' lien cases discloses a shifting burden between the parties. With mechanics' liens, Kansas has adopted the "rule of presumptive use." Under this rule, proof of delivery of construction materials to a building site "constitutes *prima facie* evidence, or creates a presumption, of their use in the improvement [citation omitted]." *Seyb-Tucker Lumber and Implement Co. v. Hartley*, 197 Kan. 58, 63, 415 P.2d 217 (1966). Once this initial presumption is established, the burden of producing evidence shifts to the surety to rebut the presumption with evidence to the contrary. *Seyb-Tucker*, 197 Kan. at 64.

The rule of presumptive use has its roots in the leading case on the subject, *Rice & Floyd v. Hodge Bros.*, 26 Kan. 164 (1881). In *Rice & Floyd*, the Kansas Supreme Court sustained a mechanic's lien against arguments it had not been proven materials furnished were actually used in the construction of the buildings involved. The court acknowledged the lack of proof that materials actually went into the buildings; but stated it was shown there was a contract for the furnishing of materials, materials were furnished and supposedly used in the construction of the

buildings, and that a few articles were actually used in construction of the buildings. "Under these circumstances," the court stated, "it would not be justice to refuse the lien." *Rice & Floyd*, 26 Kan. at 170. The court stated that a requirement of direct and positive testimony as to each article delivered would emasculate the mechanic's lien law and would make it "more of a burden and a trap than a blessing and a help." *Rice & Floyd*, 26 Kan. at 170.

An exception to the rule of presumptive use was provided in *Rice & Floyd*, however. More stringent proof (proof other than establishment of a prima facie case) may be required where there is a "well-grounded suspicion" the contractor used the materials purchased for some other building or some other purpose. *Rice & Floyd*, 26 Kan. at 170. In such a case, the court stated it might be fair to require the sellers of the materials to show the materials sold *were in fact used* in the construction of the building. *Rice & Floyd*, 26 Kan. at 170-71.

The rule enunciated by the Supreme Court in *Rice & Floyd* was later followed in *David v. Doughty*, 96 Kan. 556, 152 Pac. 660 (1915). Therein the rule was stated as follows:

"To entitle a person to a lien for material furnished in the erection of a building it devolves on the claimant to show that the material was purchased for and applied to that use, but if it be shown that the material was purchased to be used in the building and delivered to the builder, or taken by him to his premises to be so used, and some evidence is offered that material of that character was actually used in the building, in the absence of any discrediting circumstances it will ordinarily be sufficient to show that the material was used in the building." Syl.

This rule was again articulated by the court in *Seyb-Tucker*, 197 Kan. at 64.

Applying the rule of presumptive use to the instant case, Cedar Vale Co-op has established it had a contract with Allen Utilities to supply oil, gas, and other materials on a charge account basis. It was also proven that the men who charged supplies at the Co-op were, indeed, employed by Allen Utilities and that they did, on some days, work at the Peru, Kansas, building site. Even under the rule of presumptive use, however, this is not enough evidence to show the men so charging materials used those materials in accord with construction on that site. We have carefully examined the record provided us and conclude Cedar Vale Co-op has not presented enough evidence to establish a prima facie case. Cedar Vale having proved no facts in support of

its position, Universal cannot be held liable as surety for charges made at the Cedar Vale Co-op.

The decision of the trial court is reversed.